UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JOSHUA J. ROBINSON, ) | |
| ) | |
| Plaintiff/Counter-defendant, ) | |
| ) | |
| v. ) | Cause No. 1:18-CV-194-HAB |
| ) | |
| GOSIGER MACHINE TOOLS, LLC, ) | |
| and GOSIGER HOLDINGS, INC., ) | |
| ) | |
| Defendants/Counterclaimant[1]. ) | |

**OPINION AND ORDER**

Rather than dispatch employees from its home office in Indianapolis, Defendants Gosiger Machine Tools, LLC, and Gosiger Holdings, Inc., (collectively "GMT") utilize a home dispatch system for its service technicians. Those technicians are given a company vehicle, travel directly from their home to the day's jobsite, and then travel directly home at the end of the day. For more than twenty years, GMT has not paid its technicians for the first thirty minutes of drive time to and from the technicians' homes. This longtime policy is the subject of this lawsuit.

Before the Court are competing dispositive motions. Although the parties have thoroughly briefed several issues, the Court finds one dispositive: were the tasks performed by Plaintiff Joshua J. Robinson ("Robinson") prior to leaving home and after returning to home "integral and indispensable" to his employment, such that the commute falls within the ambit of the continuous workday rule? The Court answers this question in the negative and will enter summary judgment in favor of GMT on Robinson's claims.

---

[1] Gosiger Holdings, Inc. is not a party to the counterclaim.

**A.     Factual Background**

For four-and-a-half years, Robinson was employed by GMT as a service technician. Robinson did not work out of GMT's home office in Indianapolis but would instead travel each day from his home in northern Indiana to the day's jobsite in a GMT-provided vehicle. At the conclusion of the workday, Robinson would drive the same vehicle back to his home. This much is undisputed.

Also undisputed, at least if one considers Robinson's post-deposition affidavit[2], is that Robinson performed work-adjacent tasks before leaving and after returning home. Each morning, Robinson reviewed his scheduled workday and organized the tools he would need to perform that day's tasks. After completing these tasks, Robinson would drive to the first worksite.

These administrative tasks continued after Robinson returned home. Robinson received an email from GMT each evening setting out the next day's schedule. Robinson would then use this information to calculate the drive time to the first jobsite to assure that he arrived on time. Robinson also performed "cleanup," presumably of his work vehicle, and recorded his billable job time.

Robinson was not paid for any of the pre-departure or post-arrival tasks. Instead, Robinson's compensated workday began when he arrived at the first job site or thirty minutes into his morning drive, which ever occurred first. Similarly, Robinson's compensated workday would

---

[2] GMT urges the Court to disregard Robinson's affidavit under the "sham affidavit" rule. The rule against sham affidavits provides that an affidavit is inadmissible when it contradicts the affiant's previous sworn testimony unless the earlier testimony was ambiguous, confusing, or the result of a memory lapse. *See*, *e.g.*, *Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015). The rule is designed to avoid sham factual issues and prevent parties from taking back concessions that later prove ill-advised. *United States v. Funds in the Amount of $271,080*, 816 F.3d 903, 907 (7th Cir. 2016). The Seventh Circuit has emphasized that the rule is to be used with "great caution." *Id*. Thus, where the change is plausible or the party offers a suitable explanation for the change, the changes in testimony go to the witness' credibility rather than admissibility. *Id*. Having reviewed the affidavit and the relevant deposition excerpts, the Court concludes that it can consider the affidavit for the purposes of ruling on the parties' summary judgment motions. The Court does not believe that the affidavit directly contradicts any deposition testimony. While Robinson could have answered some open-ended questions more thoroughly, his attempt to supplement those answers is not so suspect as to render the affidavit inadmissible.

end when he left the last job site, with Robinson additionally compensated for any drive time home over thirty minutes.³ Like the other facts in this case, the policy is undisputed.

**B.    Legal Discussion**

Robinson asks this Court to find GMT liable for violations of the Fair Labor Standards Act ("FLSA") and Indiana's Wage Payment Statute, Ind. Code § 22-2-4-1 *et seq.* Robinson's complaint additionally contains a claim for conversion, but he has abandoned that claim in his summary judgment filings.

**1.    *Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

---

³ Robinson's affidavit characterizes the policy as requiring him to reduce his "actual time worked by thirty (30) minutes each workday morning and by thirty (30) minutes each workday evening, which amount of time GMT referred to as the national average commute time." (ECF No. 38-1 at 3). However, his deposition testimony is clear that any "reduction" was limited to drive time of thirty minutes or less; no time at the jobsite was ever reduced. (ECF No. 30-1 at 7).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

The fact that the parties have filed cross-motions for summary judgment does not alter the standard. When evaluating each side's motion, the court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561–62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

**2.**     *The Continuous Workday Rule*

While there appears to have been some early confusion as to the nature of Robinson's claim, the summary judgment filings have prompted Robinson to make his position clear. GMT originally believed that Robinson wanted to be paid for his commute to and from the jobsites. Relying on the Portal-to-Portal Act ("PPA"), 29 U.S.C. § 254(a), as amended by the Employee Commuting Flexibility Act ("ECFA"), GMT argued that Robinson was not entitled to payment for travel "within the normal commuting area" and that its thirty-minute benchmark was well-within that area. (*See* ECF No. 30 at 4–8).

Robinson does not meaningfully respond to GMT's argument because, in his words, "his travel for GMT was all in a day's work and thus compensable." (ECF No. 37 at 10). According to Robinson, his workday began with his pre-departure activities and ended with his post-arrival activities, rendering everything in between, including his drives to and from his home, compensable under the continuous workday rule. He describes the idea that his travel was a commute as "fictitious." (*Id*. at 9).

The Court views Robinson's response as clearly drawing the battle lines. There is only one issue before the Court, and that is whether Robinson's at-home activities started and ended his daily time clock. If they did, then his travel to the worksite is part of his continuous workday and is fully compensable. If they did not, then GMT's PPA analysis is correct. Since both parties agree that the Wage Payment Act claim rises and falls with the FLSA claim, *Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 178 (7th Cir. 2011), the resolution of this issue is dispositive as to all of Robinson's claims.

The PPA narrowed the scope of employer liability under the FLSA by excepting from coverage two activities that previously had been treated as compensable: "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities." *See* 29 U.S.C. § 254(a). Although the PPA did not define "principal activity," the Supreme Court has interpreted the term to embrace "all activities which are an integral and indispensable part of the principal activities." *See Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 33 (2014) (internal quotation marks and citation omitted). In 1996, Congress amended the PPA by passing the ECFA, which clarifies the rules regarding payment for time employees spend using employer-provided vehicles for their commute. *See* H.R.Rep. No.

5

104–585, at 2 (1996). The ECFA excludes payment for the time an employee spends commuting and engaging in activities that are incidental to commuting:

> the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a). Thus, as amended by the ECFA, the PPA carves out from the FLSA time employees spend engaged in activities that are incidental to their use of a company vehicle, as long as the employees' use of the vehicle is subject to an agreement with the employer and the vehicle is used for travel within the normal commuting area for the employer's business. *Id*.; *see also Rutti v. Lojack Corp.*, 596 F.3d 1046, 1052 (9th Cir. 2010). In other words, if activities are "integral and indispensable" to the employees' principal activities, then they are compensable, but if, on the other hand, they are "incidental" to the use of a company vehicle for commuting, they are not. *See Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400, 414 (5th Cir. 2011).

Although the ECFA does not define the term "incidental," its legislative history provides some guidance. The House Report acknowledges that it "is not possible to define in all circumstances what specific tasks and activities would be considered 'incidental' to the use of an employer's vehicle for commuting." H.R.Rep. No. 104–585, at 5 (1996). But it makes clear that communication between the employee and employer to receive assignments or instructions, or to transmit advice on work progress or completion, as well as "routine vehicle safety inspections or other minor tasks" are included among the incidental activities which are not compensable under the ECFA. *Id*.

The question of whether Robinson's at-home activities were "principal" and therefore compensable is vital in this case because it implicates the applicability of the continuous workday

rule. This rule provides that the PPA does not apply "to the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday." 29 C.F.R. § 790.6(a); *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005). Stated another way, if Robinson's at home activities were "principal" activities, then GMT was liable to pay for everything in between.

The problem for Robinson is that the activities he describes have not been found by courts to be principal activities. In *Chambers*, for example, the plaintiffs sought compensation for time spent logging into a device to learn their first assignment, carrying the device to their company vehicle and plugging it in before driving to their first service call, unplugging the device and transporting it to their houses from the van at the end of the day, and plugging it in to upload information regarding the current day's stops and the next day's assignment. 428 Fed. Appx. at 415–17. Noting that the House Report to the ECFA included communications to receive assignments as among the activities that are incidental to a commute, the court concluded that the activities the plaintiffs described all "relate to the employee's commute," and thus are non-compensable under the ECFA. *Id.* at 417; *see also Donatti v. Charter Commc'ns, LLC*, 950 F.Supp.2d 1038, 1053 (W.D.Mo.2013) (finding time spent carrying equipment between company vehicles and the employees' homes incidental to commute). Similarly, in *Rutti*, 596 F.3d at 1057, the Ninth Circuit concluded that time a car alarm technician spent before his shift "receiving, mapping, and prioritizing jobs and routes for assignment" was incidental to his commute rather than integral to his principal activities. As another court reasoned, checking assignments early enough to ensure that the employee allots sufficient time for his commute to his first job is "by its very nature" incidental to the employee's use of a company vehicle. *Donatti*, 950 F.Supp.2d at 1054. Courts have also held that cleaning, maintaining, and performing routine safety inspections

of company vehicles are activities that should be considered incidental to the employee's use of a company vehicle. *See*, *e.g.*, *Aiken v. City of Memphis*, 190 F.3d 753, 759 (6th Cir. 1999) (finding tasks involved in keeping vehicles clean and scheduling maintenance incidental to commute); *Butler v. DirectSAT USA, LLC*, 55 F.Supp.3d 793, 807–09 (D. Md. 2014) (finding time spent reading emails regarding schedule, prioritizing routes, or maintaining vehicle not compensable); *Donatti*, 950 F.Supp.2d at 1053 (finding time spent quickly inspecting company vehicle and removing and replacing hazard cones from around the vehicle incidental to commute).

The activities that Robinson claims he performed are remarkably like the non-compensable activities identified above. Indeed, many (identifying jobsites, planning routes, communicating with GMT, logging daily activities) have been expressly found not to be principal activities. Based on this authority, the Court has no difficulty finding that Robinson's at-home activities were not principal and, therefore, did not trigger the continuous workday rule.

Rather than address any of the negative authority, Robinson relies on three district court cases of his own: *Guzman v. Laredo Sys., Inc.*, 2012 WL 5197792 (N.D. Ill. Oct. 19, 2012); *O'Brien v. Encotech Const.*, 2004 WL 609798 (N.D. Ill. Mar. 23, 2004); and *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, 2004 WL 1882449 (N.D. Ill. Aug. 18, 2004). However, as GMT notes, these cases are inapplicable because they all address work performed at the employer's place of business rather than at the employee's home. *Ladegaard*, 2004 WL 1882449 at *3 ("Thus, on any day that a Hard Rock employee performed some preparation at the yard, his time spent performing that activity and the travel time from the yard to the job site is compensable under the federal and state statutes."); *O'Brien*, 2004 WL 609798 at *2 ("On any day that a helper performed some preparation at the yard, the helper's travel from the yard to a job site was work covered by

the statutes."); *Guzman*, 2012 WL 5197792 at *1–2. Robinson's preferred cases, then, do little to assist his argument.

With no case law holding that Robinson's activities were principal activities, the Court is compelled to find that those activities were non-compensable. They could not, then, trigger the continuous workday rule. Robinson has posited no other basis on which GMT could be liable to pay him for his commutes; rather, he has waived any such arguments by failing to respond to GMT's PPA position. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (collecting cases). Robinson's FLSA claim must fail, and his Wage Payment Act claim along with it. Summary judgment in GMT's favor is warranted.

**3.    *GMT's Counterclaim***

All that remains is GMT's state law counterclaim against Robinson. GMT claims that Robinson inflated his job time, thus collecting money from GMT he did not earn. It is not clear precisely what GMT's legal theory of recovery is, but any such claim lies in Indiana, not federal, law. (ECF No. 40 at 7–13).

As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co*., 193 F.3d 496, 501 (7th Cir. 1999); *see also Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims"); *Wright v. Associated Ins. Cos*., 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendant state-law claims rather than resolving them on the merits"). Yet the court of appeals has discussed "three well-recognized

exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright*, 29 F.3d at 1252. As the court has explained, occasionally there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." *Id*.

The first example that the court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Wright*, 29 F.3d at 1251. That concern is not present here, however, because Indiana law gives a plaintiff three years from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. *See* Ind. Code § 34-11-8-1.

The second exception recognized in *Wright* applies when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." 29 F.3d at 1251 (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir. 1986)). Here, although the Court has devoted significant resources to the disposition of the federal claim on summary judgment, it has not delved deeply into the state law claims. *See Davis*, 534 F.3d at 654 ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case"). Thus, while there clearly are instances in which "a district court should exercise supplemental jurisdiction over pendent state law claims for reason of judicial efficiency," *Miller Aviation v. Milwaukee Cty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001), this is not one of them.

The third circumstance to which the court of appeals has pointed in which disposition of pendent state law claims may be appropriate "occurs when it is absolutely clear how the pendent claims can be decided." *Wright*, 29 F.3d at 1251. For example, "[i]f the district court, in deciding

a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter claim to the state court." *Id*. In addition, if the state-law claims are "patently frivolous," they should be resolved right away in the federal court. *Id*. However, "[i]f the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Id*. The Court questions the viability of GMT's claims as well as its motivation in bringing them (they do, as Robinson alleges, appear to be retaliation for the initial lawsuit), but it cannot say that they are patently frivolous.

In sum, the Court concludes that none of the exceptions to the "usual practice" applies in this case. Accordingly, the Court denies Robinson's Motion for Summary Judgment on GMT's counterclaim (ECF No. 31) without prejudice and dismisses the counterclaim with leave to refile in state court.

**C.     Conclusion**

For the foregoing reasons, GMT's Motion for Summary Judgment (ECF No. 29) is GRANTED and Robinson's Motion for Partial Summary Judgment (ECF No. 34) is DENIED. The Clerk is DIRECTED to enter judgment in favor of Defendants and against Plaintiff on all Plaintiff's claims. Robinson's Motion for Summary Judgment (ECF No. 31) is DENIED without prejudice. Gosinger Machine Tools LLC's Counterclaim (ECF No. 8 at 19–20) is DISMISSED WITHOUT PREJUDICE to refiling in state court.

SO ORDERED on August 18, 2020.

                                       s/ *Holly A. Brady*
                                      JUDGE HOLLY A. BRADY
                                      UNITED STATES DISTRICT COURT